MINUTE ENTRY
ROBY, M. J.
April 15, 2009

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DANIEL FUSELIER, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 08-3974** |
| **MARLIN N. GUSMAN, ET AL.** | **SECTION: "A" (4)** |

## ORDER

Before the Court is a **Motion To Compel Discovery and/or for Contempt, Sanctions and Attorneys Fees (R. Doc. 17)** filed by the Plaintiff, Daniel Fuselier, individually and on behalf of his deceased father, Oscar Fuselier, (collectively, "Fuselier"), seeking an Order from this Court compelling the Defendants, Marlin Gusman, the Criminal Sheriff of Orleans Parish, et al. (collectively, "the Defendants") to produce all records and to respond to all outstanding discovery. The Defendants oppose the motion. (R. Doc. 16.) The motion was heard with oral argument on Wednesday, April 15, 2009. Participating were: Michelle Gaudin on behalf of Fuselier and Stacey Roland on behalf of the Defendants.[1]

**I.    Background**

Daniel Fuselier instituted this wrongful death and survival action against Gusman and other officers with the Orleans Parish, based upon the untimely and brutal death of his father, Oscar

---

[1] The Court reporter was Pinkey Ferdinand at (504) 589-7781.

MJSTAR:  00:16

Fuselier, a 58-year old, disabled veteran. (R. Doc. 1.) Oscar Fuselier was arrested on an outstanding warrant for a traffic offense and transported to the Orleans Parish Prison. (R. Doc.1.) Subsequently, Fuselier was placed in a cell with "high-security-risk" inmates, at which time he allegedly was beaten to death by a group of the inmates. (R. Docs. 1, 17.)

During the course of discovery, Fuselier propounded Interrogatories and Requests for Production upon the Defendants on October 27, 2008. After the Defendants failed to respond, Fuselier filed a Motion To Compel Discovery Responses and for Reasonable Attorneys Fees and Costs. (R. Doc. 9.) The motion was set for hearing on January 7, 2009. However, on the date of the hearing, counsel for both parties indicated that they had reached a consent agreement regarding the motion and the outstanding discovery. (*See generally* R. Doc. 14.) Accordingly, the undersigned issued an Order adopting the agreement and entering it into the record.[2] (R. Doc. 14, p. 3.)

On April 6, 2009, Fuselier filed the instant motion seeking an Order from this Court requiring the Defendants to produce any and all records and to respond to all outstanding discovery immediately. (R. Doc. 17, p. 1.) Fuselier contends that recent deposition testimony has confirmed the existence of log books and handwritten statements, neither of which have been produced. (R. Doc. 17, pp. 1-2.) He further contends that there are additional records in the criminal file of Richard Jackson–an inmate who had been charged with armed robbery and was detained in the cell where Oscar Fuselier was placed. Allegedly, Jackson is one of the individuals who was involved

---

[2] During the oral hearing on the subject motion, counsel for Fuselier suggested that the agreement outlined in this Court's Order (R. Doc. 14) differs slightly from the actual agreement that was read into the record on January 7, 2009. Upon review of the audio transcript from the hearing, the undersigned notes that the agreement that was memorialized in this Court's written Order is, in fact, the agreement that was verbally communicated by both parties in open court, with the following minor exception: As to **Interrogatory No. 1,** the Defendants agreed to produce further answers identifying the individuals who were witnesses to Mr. Fuselier's detention prior to his *loss of consciousness* and beating.

in the violent assault of Mr. Fuselier. (R. Docs. 1, 17.) Fuselier also emphasizes that the Defendants still have not provided a copy of the facsimile which ordered his father's release for his traffic offense, notwithstanding the agreement that was reached in open court on January 7, 2009. (R. Doc. 17, pp. 3-4.) Accordingly, Fuselier seeks: (1) an Order compelling a response to the outstanding discovery requests; (2) the imposition of sanctions and/or an Order of contempt; and (3) an award of attorney's fees and costs associated with the subject motion. (R. Doc. 17, p. 4.)

The Defendants contend that counsel for Fuselier requested the log books recently via email, on April 1, 2009. They explain that they are taking steps to obtain those log books. With respect to the handwritten statements, the Defendants maintain that those statements are incorporated into the formal, typed Incident Report which already has been produced to counsel for Fuselier. The Defendants further argue that they have produced any and all evidence in their possession, including: (1) all relevant documents pertaining to Oscar Fuselier; and (2) all readily available investigative material related to Richard Jackson. The Defendants emphasize that they never had any intent to "deprive [Fuselier] of information to which he is reasonably entitled." Therefore, they urge the Court to deny the motion.

## II.  **Standard of Review**

### A.  **Scope of Discovery**

Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." FED.R.CIV.P. 26(b)(1). The Rule specifies that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* The discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. *Herbert v. Lando,* 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and

necessary boundaries." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (quoting *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." *Coleman v. American Red Cross*, 23 F.3d 1091, 1096 (6th Cir.1994).

Under Rule 26(b)(2)(c), discovery may be limited if: (1) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from another, more convenient, less burdensome, or less expensive source; (2) the party seeking discovery has had ample opportunity to obtain the information sought; or (3) the burden or expense of the proposed discovery outweighs its likely benefit. FED.R.CIV.P. 26(b)(2)(c). In assessing whether the burden of the discovery and outweighs the benefit, a court must account for: (1) the needs of the case; (2) the amount in controversy; (3) the parties' resources; (4) the importance of the issues at stake in the litigation; and (5) the importance of the proposed discovery in resolving the issues. *Id*.

### B. <u>Contempt</u>

Pursuant to Federal Rule of Civil Procedure ("Rule") 37(b)(2)(A)(vii), a court may treat as contempt of court a party's failure to obey an order to provide or permit discovery. FED.R.CIV.P. 37(b)(2)(A)(vii). Specifically, Rule 37(b)(2)(A) provides:

> If a party . . . fails to obey an order to provide or permit discovery . . . the court in where the action is pending may issue further just orders. They may include the following:
>
> > (I) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> >
> > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

4

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

FED.R.CIV.P. 37(b)(A).

Civil contempt vindicates the rights of aggrieved persons under valid court orders. *Louisiana Ed. Ass'n v. Richland Parish Sch. Bd.*, 421 F.Supp. 973, 975 (D.C. La. 1976). It is well-settled that a party seeking an order of civil contempt must establish by clear and convincing evidence that: (1) a court order was in effect; (2) the order required certain conduct by the respondent; and (3) the respondent failed to comply with the court's order. *Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 382 (5th Cir. 1999).

### III. Analysis

#### A. Motion To Compel

Fuselier filed the subject motion seeking an Order from this Court compelling the Defendants to produce the following:

1. All Log Books;

2. Any Handwritten Statements;

3. A New Incident Report;

4. A Manual Folder and Release Record for Oscar Fuselier (the folder may or may not be in the possession of an individual named "Crump");

5. Missing Records of Richard Jackson (including Jackson's Arrest Register, the Intake and Processing Copy; the Fingerprints Copy; the Magistrate Court

> Copy; the District Attorney's Copy; and the Arrested Person's Copy); and
>
> 6. The Missing Fax Which Ordered Mr. Fuselier's Release for His Traffic Offense.

Fuselier took the depositions of Deputy Jonathan Griffin ("Griffin") and Chief William Hunter ("Hunter"). According to Fuselier, Deputy Griffin testified that all log books which show the movement of individuals–like the decedent Fuselier–through the Intake Processing Center ("IPC") are kept. Fuselier argues that this testimony directly contradicts the earlier testimony of Chief Hunter–who indicated that the IPC has no such records. Deputy Griffin further testified that he provided a handwritten statement to Captain Melvin Joseph ("Joseph") regarding the events at issue.

According to counsel for Fuselier, counsel for the Defendants had previously advised that no handwritten statements were taken. Counsel for Fuselier also points out that co-counsel for the Defendants had indicated that such handwritten statements are "not kept" and instead are "encompassed" in the Incident Report. Thus, in light of these conflicting accounts, Fuselier seeks an Order compelling the production of the log books and handwritten notes.

With respect to the Incident Report, Fuselier emphasizes that the Defendants previously produced an Orleans Parish Criminal Sheriff's Office Incident Report. According to Fuselier, Deputy Griffin stated that he had reviewed a two-page Incident Report before his deposition and that it was not the same Incident Report that had been produced. Fuselier further asserts that the Defendants did not produce the new Incident Report with the critical information until March 30, 2009–after five depositions had been taken. Fuselier stresses that the new Report contains "more damning evidence" than the first. As to the remaining materials, Fuselier insists that the items have not been produced notwithstanding this Court's Order (R. Doc. 14), which outlines the agreement reached by counsel for both parties in open court on January 7, 2009 to produce the items.

6

In opposition, the Defendants urge the Court to deny the motion in its entirety.  First, the Defendants contend that Fuselier's specific request for any log books and handwritten statements initially was made verbally, on March 24, 2009, after the deposition of Deputy Griffin.  They insist that the log books were requested "formally" via email on April 1, 2009.  Accordingly, the Defendants explain that they are "in the process of locating and obtaining the log books."  As to the handwritten statements, they reiterate that those statements are incorporated into the formal, typed Incident Report which already has been produced to counsel for Fuselier.

With respect to the Incident Report, the Defendants maintain that they have produced any and all evidence in their possession regarding Oscar Fuselier.  They emphasize that Captain Joseph's Incident Report was not withheld.  Rather, they claim that it was inadvertently misplaced with Richard Jackson's material.  In any event, the Defendants note that the Incident Report has since been provided.

Regarding the manual folder, the release record, the missing records of Richard Jackson, and the missing fax, the Defendants assert that they have provided counsel for Fuselier with "each and every piece of investigative material in their possession."  They also explain that they have attempted to locate the alleged missing information, but have been told repeatedly that such items do not exist.  The Defendants urge counsel for Fuselier to try to secure the missing fax via other means, *i.e.*, by issuing a *subpoena duces tecum* to the Jefferson Parish Sheriff's office.

During the oral hearing, counsel for Fuselier acknowledged that counsel for the Defendants recently agreed to produce the requested log books that should have been produced subject to Request for Production No. 1.  However, the undersigned inquired as to whether counsel for the Defendants had personally asked someone in the Sheriff's Office about the log books. Counsel for the Defendants stated that, according to the Colonel, only "transfer sheets" are kept.  The

7

undersigned followed up by asking why these transfer sheets had not yet been produced. Counsel explained that she and her co-counsel had asked the Sheriff's Office to produce everything when they originally forwarded the discovery requests. Counsel also admitted that she had not personally gone over the discovery requests one-by-one with the Sheriff's Office. Finding no justification for this failure to conduct due diligence with respect to the outstanding discovery, the Court hereby orders counsel for the Defendants to consult with the Sheriff's Office and to produce the transfer sheets and/or the log books no later than eleven (11) days from the signing of this Order.

The undersigned also asked counsel for the Defendants whether she was absolutely certain the handwritten statements which allegedly were incorporated into the Incident Report were, in fact, discarded. The Court also asked counsel to confirm whether there is a policy–formal or informal–that governs the discarding process with respect to handwritten statements and/or similar documents. Counsel could not verify this information. Accordingly, the Court hereby orders counsel for the Defendants: (1) to confirm whether the handwritten statements at issue were discarded; and (2) to determine whether there is a policy regarding the destruction and/or discarding of such materials. Counsel will have eleven (11) days from the signing of this Order to uncover this information. If there is a policy, counsel is ordered to produce a copy of that policy to the undersigned no later than eleven (11) days from the signing of this Order.

In sum, the Court hereby orders the Defendants to produce: (1) the Log Books and/or Transfer Sheets; (2) any Handwritten Statements; (3) the Manual Folder and Release Record for Oscar Fuselier; (4) the Missing Records of Richard Jackson (including Jackson's Arrest Register, the Intake and Processing Copy; the Fingerprints Copy; the Magistrate Court Copy; the District Attorney's Copy; and the Arrested Person's Copy); (5) the Missing Fax which Ordered Mr. Fuselier's Release for the Traffic Offense; and (6) any Sheriff's Office policy regarding the

destruction of handwritten statements. All items must be produced no later than eleven (11) days from the signing of this Order.

**B.      Contempt and/or Sanctions**

Fuselier also seeks an Order of contempt and/or the assessment of sanctions based upon the Defendants' failure to provide the requested discovery items. Counsel for Fuselier suggests that, because counsel for the Defendants have not been forthcoming with the discovery responses, she will be required to re-depose certain individuals regarding the recently obtained evidence that was previously withheld.

The Defendants, however, insist that they never had any intent to "deprive [Fuselier] of information to which he is reasonably entitled." Counsel for the Defendants maintain that they have acted in good faith, and they argue that the imposition of sanctions and/or the issuance of a contempt order is unnecessary and unwarranted.

During the hearing, the Court acknowledged that Fuselier has, in fact, received the most updated version of the Incident Report. Counsel for Fuselier clarified, however, that the failure to promptly produce the Incident Report was part and parcel of the contempt and sanctions portion of the instant motion. The Court then asked counsel for the Defendants whether she has actually spoken with Captain Melvin Joseph about the discrepancies with the two Incident Reports that were produced. The Court further inquired as to whether counsel had confirmed that the information in both Incident Reports is factually accurate.

Counsel for the Defendants indicated that she had confirmed the facts with the witnesses. However, when asked whether she had spoken with Captain Joseph about his Incident Reports, counsel continued her reply–in a somewhat nonchalant fashion–stating that "we just haven't done it yet." Thus, it is clear that counsel has not spoken with the Captain about the Incident Reports.

9

Furthermore, counsel has failed to provide any reason whatsoever for the delay. Counsel also provided no cogent explanation for her failure to produce: (1) the manual folder and release record for Oscar Fuselier; and (2) the complete criminal file for Richard Jackson.

A party commits contempt by violating a definite and specific order of the court which requires him or her to perform or refrain from performing a particular act or acts with knowledge of the court's order. *Piggly Wiggly*, 177 F.3d at 382 (internal citations omitted). "A civil contempt sanction is coercive rather than punitive and is intended to force a recalcitrant party to comply with a command of the court." *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987). However, civil contempt can serve two different purposes: (1) it can enforce, through coerciveness, compliance with a court's order; or (2) it can be used to compensate a party who has suffered unnecessary injuries or costs because of the contemptuous conduct. *Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392, 400 (5th Cir. 1987). Nonetheless, the court may exercise its power with discretion, and some courts have held that the power should be used sparingly. *Richland Parish*, 421 F.Supp. at 975.

The April 2, 2009 Order (R. Doc. 14) that Fuselier attempts to use as the basis for the instant contempt motion consisted of a three-part ruling. First, the Order *denied as moot* the underlying motion to compel which had been filed by Fuselier. (emphasis supplied). Second, it adopted and entered into the record the *agreement* reached by counsel for both parties regarding the discovery dispute as to Interrogatory Nos. 1 and 2 and Request for Production Nos. 1, 2, and 3. (emphasis supplied). Finally, the Order instructed counsel for the Defendants to produce the documents pertaining to Richard Jackson to counsel for Fuselier.

The primary function of the Order was to memorialize the agreement reached by counsel for both parties in open court on January 7, 2008. Furthermore, the subject motion raises issues and

concerns that were not addressed in the earlier ruling. Considering these circumstances, the undersigned finds that the conduct Fuselier complains of in the subject motion does not amount to an outright violation of an express Order of the Court. Accordingly, the Court declines to hold the Defendants in contempt based upon the conduct described herein.

However, in light of the foregoing cavalier disregard for the discovery process, and the blatant failure to follow through with the agreement that was entered into the record and adopted by this Court, the undersigned determines that the imposition of sanctions is most appropriate in the matter here. The Court finds that, up to this point, counsel for the Defendants has taken a lackadaisical approach to discovery. Therefore, the Court grants Fuselier's request for an award of fees and costs, as such is the appropriate remedy under Federal Rule of Civil Procedure ("Rule") 37(a)(3)(B) when a party fails to respond to discovery.

## IV.  Conclusion

Accordingly,

**IT IS ORDERED** that Daniel Fuselier's **Motion To Compel Discovery and/or for Contempt, Sanctions and Attorneys Fees (R. Doc. 17)** is hereby **GRANTED IN PART** and **DENIED IN PART.**

- **IT IS GRANTED** as to Fuselier's **Motion To Compel Discovery and For Sanctions**. The Defendants shall produce: (1) the **Log Books and/or Transfer Sheets**; (2) any **Handwritten Statements**; (3) the **Manual Folder and Release Record for Oscar Fuselier**; (4) the **Missing Records of Richard Jackson** (including Jackson's Arrest Register, the Intake and Processing Copy; the Fingerprints Copy; the Magistrate Court Copy; the District Attorney's Copy; and the Arrested Person's Copy); and (5) the **Missing Fax which Ordered Mr. Fuselier's Release for the Traffic Offense**, **no later than eleven (11) days** from the signing of this Order. With respect to the request for sanctions, Fuselier is awarded the **fees and costs** incurred in bringing the motion.

- **IT IS DENIED** as to Fuselier's **Motion For Contempt.**

11

**IT IS FURTHER ORDERED** that counsel for the Defendants shall: (1) **confirm whether the handwritten statements at issue were discarded**; and (2) **determine whether there is a policy regarding the destruction and/or discarding of such materials**. Counsel will have eleven (11) days from the signing of this Order to uncover this information. If there is a policy, counsel is hereby ordered to produce a copy of that policy to the undersigned **no later than eleven (11) days** from the signing of this Order.

**IT IS FURTHER ORDERED** that Fuselier shall file a motion to fix attorney's fees into the record by **Wednesday, April 29, 2009**, along with: (1) an affidavit attesting to his attorney's education, background, skills, and experience; (2) sufficient evidence of rates charged in similar cases by other local attorneys with similar experience, skill, and reputation and; (3) the documentation required by Local Rule 54.2. Any opposition to the fee application shall be filed no later than **Wednesday, May 6, 2009.** Fuselier shall notice the motion to fix attorney's fees for hearing on **Wednesday, May 13, 2009** and the motion shall be heard on that date **without oral argument**.

New Orleans, Louisiana, this <u>21st</u> day of <u>April</u>, 2009

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**